1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

LITA N.,

                            Plaintiff,

        v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                            Defendant.

Case No. 3:24-cv-05778-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12      Plaintiff filed this action under 42 U.S.C. § 405(g) for judicial review of

13  defendant's denial of plaintiff's application for supplemental security income ("SSI").

14  Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule

15  MJR 13, the parties have consented to have this matter heard by the undersigned

16  Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was

17  not disabled. Dkt. 4, Complaint.

18      On July 12, 2021, plaintiff filed an application for child benefits, and SSI, alleging

19  a disability onset date of March 3, 1993. On March 13, 2024, a hearing was conducted

20  by ALJ Evangeline Mariano-Jackson. AR 42-66. At the hearing, plaintiff amended the

21  onset date to May 12, 2021, through her representative, and withdrew the application

22  for child benefits. AR 18, 47-49. On April 9, 2024, the ALJ issued a decision finding

23  plaintiff did not meet the criteria for disability benefits. 15-41.

24
25

The ALJ determined plaintiff had the following severe impairments: somatic symptom syndrome, chronic pain, left cubital tunnel syndrome, mild scoliosis, posttraumatic stress disorder (PTSD), generalized anxiety disorder, major depression, and attention deficit hyperactivity disorder (ADHD). AR 21. The ALJ determined plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following additional limitations:

> She can stand and/or walk for 6 hours in an 8-hour day and sit for 6 hours in an 8-hour workday; can occasionally climb ladders, ropes, and scaffolds; can frequently but not constantly reach overhead with bilateral upper extremities; can never be exposed to vibration; can never work at unprotected heights or around moving mechanical parts or heavy machinery; can understand, remember, and carry out simple, routine, and repetitive tasks involving only simple work-related decisions and occasional decision-making changes in the work setting; can tolerate occasional brief and superficial interaction with coworkers; and is limited to performing work requiring no public contact.

AR 24. The ALJ determined plaintiff could perform the requirements of the following representative occupations: Marker (DOT 209.587-034, light, SVP 2), Router (DOT 222.587-038, light, SVP2), Collator operator (DOT 208.685-010, light, SVP 2). AR 34.

STANDARD

The Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that

2

1  does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the

2  ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified

3  by the ALJ are considered in the scope of the Court's review. *Id.*

DISCUSSION

4

5  **1. Medical evidence.**

6      Plaintiff argues that the ALJ erred in evaluating the medical opinions of Dr. Alysa

7  Ruddell, Ph.D. and Dr. Renee Eisenhauer, Ph.D. Dkt. 9 at 3-9.

8      The Commissioner "will not defer or give any specific evidentiary weight . . . to

9  any medical opinion(s) . . . including those from [the claimant's] medical sources." 20

10 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity

11 how he or she considered the factors of supportability and consistency in evaluating the

12 medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

13     Under the 2017 regulations,

14     an ALJ cannot reject an examining or treating doctor's opinion as
       unsupported or inconsistent without providing an explanation supported by
15     substantial evidence. The agency must "articulate ... how persuasive" it
       finds "all of the medical opinions" from each doctor or other source, 20
16     C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability
       and consistency factors" in reaching these findings, *id*. § 404.1520c(b)(2).
17 *Id.*

18  • Dr. Alysa Ruddell, Ph.D. and Dr. Renee Eisenhauer, Ph.D., 2021 opinions

19     On February 25, 2021, Dr. Ruddell examined plaintiff and completed a

20 psychological/ psychiatric evaluation. AR 481-85. She diagnosed plaintiff with anxiety

21 and depression with a severity rating of four (marked). AR 482. She also assessed

22 PTSD and substance use: cannabis. *Id.* She completed a medical source statement and

23 opined marked limitations in the following basic work activities: learn new tasks, adapt

24

25
                                    3

to changes in a routine work setting, complete a normal workday and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently. AR 483.

She opined moderate limitations in every other basic work activity and assigned an overall severity rating of marked. *Id.* She conducted a mental status exam. AR 484.

The ALJ determined that Dr. Ruddell's opinion was not persuasive because it was expressed in a check-box format, the limitations were not well supported or explained, or consistent with mental status exam findings and other evidence of record. AR 32

As for the ALJ's determination that Dr. Ruddell's opinion was unpersuasive because it was a check-box format, a check-box form may be used by medical professionals and should only be discounted if the form is unsupported, or unexplained and not clear. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014)).

Here Dr. Ruddell conducted a clinical interview, indicated an assessment/diagnosis with explanations, conducted a mental status exam and noted explanations, and administered an evaluation questionnaire. AR 481-85. This is not simply a check-box evaluation. The ALJ's decision on this point is not supported by substantial evidence.

As for the ALJ's second reason, an ALJ may reject an opinion for internal inconsistency. *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001). Yet the ALJ must consider the context of the opinion in the record, including observation and treatment notes. *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

When an ALJ seeks to discredit a medical opinion, they must explain why their own interpretations, rather than those of the doctors, are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

The ALJ found Dr. Ruddell's opinion that plaintiff's attitude and behavior were within normal limits to be inconsistent with her notation that plaintiff was challenging to interview and provided vague answers and resented clarifying questions. AR 32. The ALJ summarized the examination as follows:

> The claimant recalled 3 of 3 words on a second presentation and again after a 5-minute delay, but none at the end of the exam. Her performance on digit span was abnormal or alternatively raised "concerns about effort." Directions to perform serial 3 subtractions were provided twice and the claimant stopped during the task stating that she could not do it, but completed it after being told to count on fingers. Dr. Ruddell noted the claimant's subjective reports regarding her memory and attention, which are not of significant value on mental status exam.

*Id*. However, the ALJ did not explain how these determinations factored into her evaluation of Dr. Ruddell's opinion. Without explanation as to how these findings were inconsistent with the opined limitations, it appears that the ALJ improperly substituted her own opinion for that of Dr. Ruddell's. *See Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (holding that an ALJ improperly rejected an informed medical opinion and substituted their own judgment for that of the doctor's).

Inconsistency with the medical evidence is a valid reason to reject a medical opinion. *See Tommasetti v. Astrue*, 53 F.3d 1035, 1042 (9th Cir. 2008). Yet, the ALJ failed to explain how the medical evidence was inconsistent with Dr. Ruddell's opinion. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review"). On

March 4, 2021, Dr. Eisenhauer reviewed Dr. Ruddell's evaluation and opined the same limitations. AR 1042-44. The ALJ also rejected Dr. Eisenhauer's opinion for inconsistency with the medical record, and failed to discuss why the opinion was inconsistent, or identify those aspects of the medical record that undermined Dr. Eisenhauer's opinions. AR 32. Accordingly, the ALJ failed to provide any valid reasons for rejecting the 2021 opinions of Dr. Ruddell and Dr. Eisenhauer.

- Dr. Alysa Ruddell, Ph.D., 2023 opinion

On January 12, 2023, Dr. Ruddell examined plaintiff again and completed a psychological/ psychiatric evaluation. AR 1035-39. She again diagnosed plaintiff with anxiety, at a severity rating of four and depression with a severity rating of three. AR 1036. She also assessed somatic symptom disorder: chronic pain, intellectual disabilities: borderline intellectual functioning, and substance abuse: cannabis. *Id*. She opined marked limitations in the following basic work activities: learn new tasks, adapt to changes in a routine work setting, maintain appropriate behavior in a work setting, complete a normal workday and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently. AR 1037.

She opined none or mild limitations in the ability to understand, remember, and persist in tasks by following very short and simple instructions, moderate limitations in every other basic work activity, and an overall severity rating of marked. *Id*.

She opined plaintiff's mood was anxious; she was not oriented to time; her memory was not within normal limits, she recalled zero of three words in five minutes; her performance was not normal, her performance on the naming task was not normal

and the examiner was concerned about effort; all other categories were within normal

limits. AR 1038-39.

The ALJ determined that Dr. Ruddell's 2023 opinion was not persuasive because

it was not entirely well-supported or consistent with the record, the findings did not

support the marked limitations in the ability to maintain appropriate behavior, and Dr.

Eisenhauer found that marked limitations for new learning were not established and

moderate limitations were better established. AR 32.

The ALJ again summarized Dr. Ruddell's opinion without explaining how the

summary supported her conclusions:

> Dr. Ruddell noted that the claimant became irritated when asked to explain things
> and her mood was anxious and irascible, which is consistent with some
> limitations in social interaction that are accounted for in the residual functional
> capacity assessment, but the findings do not support marked limitations in the
> ability to maintain appropriate behavior. In addition, Dr. Ruddell noted that the
> claimant was able to participate in the conversation and her thought process was
> linear and intact. Contrary to the 2021 evaluation, the claimant recalled 0 of 3
> words in 5 minutes and recalled 2 at the end of the interview; her performance on
> digit span was normal. The claimant performed simple directions and spelled a
> word correctly forward and backward, but her performance on naming task was
> abnormal and Dr. Ruddell "was concerned about effort."

AR 32. Because the ALJ did not explain how these examination findings were

inconsistent with the limitations opined by Dr. Ruddell, this reason for discounting her

opinion is legally invalid, vague, and not reviewable by this Court. *See Brown-Hunter v.*

*Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning

behind its decisions in a way that allows for meaningful review").

As for the statement that Dr. Eisenhauer determined that moderate limitations for

complex learning were better established, the ALJ provides no reason as to why Dr.

Eisenhauer's opinion was more persuasive than Dr. Ruddell's. *See Garrison v. Colvin*,

759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion").

Therefore, the ALJ failed to provide a proper basis for discounting Dr. Ruddell's 2023 opinion.

- Harmless error

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id.* at 1052, 1054*; see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

Here the vocational expert testified that an individual who would be absent two to three days on a consistent basis due to psychological symptoms that preclude the ability to complete an eight-hour workday, and 40-hour work week, would not be able to perform any of the jobs identified. AR 65. He also testified that an individual who would be off-task for at least 20 percent of an eight-hour day due to psychological symptoms that cause lapses in concentration could not perform any of the jobs identified. *Id*.

If the 2021 and 2023 opinions of Dr. Ruddell and the 2021 opinion of Dr. Eisenhauer had been given legally and factually supported evaluation, the ALJ may

have decided on a more restrictive RFC. Therefore, the errors in crediting these

opinions were not harmless.

### 2. Plaintiff's statements regarding symptoms and limitations

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for

discounting her testimony regarding her mental health symptoms and limitations. Dkt. 9

at 9-15.

The ALJ's determinations regarding a claimant's statements about limitations

"must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).  In

assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has

presented objective medical evidence of an underlying impairment. If such evidence is

present and there is no evidence of malingering, the ALJ can only reject plaintiff's

testimony regarding the severity of his symptoms for specific, clear and convincing

reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Plaintiff testified that anxiety and PTSD symptoms are heightened the further she

is from home; it impacts her ability to think clearly and control over her symptoms is

decreased. AR 52. She testified that she takes an antianxiety medication to reduce the

frequency of anxiety attacks, a stimulant for ADHD, and a sleep medication for

insomnia. AR 53. She testified that these medications marginally improve her ability to

think clearly but she still has great difficulty articulating. *Id*. She stated that PTSD and

anxiety cause her to disassociate and not focus on what is happening in the moment

and when she realizes she is not focusing, she panics. AR 54.

1     She testified that she has never lived independently, the roommates she lives

2   with are responsible for making sure that rent is paid, and she does not have friends

3   other than her roommates. AR 57. In a typical week she goes to the grocery store with

4   her roommates, she doesn't drive, and she does not leave the house on her own. AR

5   58. A typical day would include being on the computer and listening to music. AR 59.

6   When she plays games, it takes her longer to do things than it would for others,

7   because she gets overwhelmed with steps that need to be taken. *Id*. Depression makes

8   her unmotivated and tired; this adds to her insomnia. AR 60.

9     The ALJ determined that plaintiff's medically determinable impairments could

10   reasonably be expected to cause some of her symptoms but her statements concerning

11   the intensity, persistence, and limiting effects, of these symptoms were not entirely

12   consistent with the medical evidence and other evidence in the record. AR 26.

13     The ALJ determined that records from May 2021 to August 2022 "do not contain

14   mental status exam findings consistent with significant difficulties in memory or

15   concentration and reflect generally appropriate behavior and interactions." AR 28. She

16   found that records after August 2022 document persistent symptoms with occasions of

17   irritable, anxious, or depressed mood and some tangentiality but largely reflect intact

18   memory and concentration with appropriate behavior. AR 29.

19     The ALJ discussed records that were consistent with the RFC, rather than those

20   that were inconsistent with plaintiff's testimony. *See Brown-Hunter v. Colvin*, 806 F.3d

21   487, 493-94 (9th Cir. 2015); *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024)

22   ("[T]o satisfies the substantial evidence standard, the ALJ must...explain why the

23

24

25

medical evidence is *inconsistent* with the claimant's subjective symptom testimony.")
(emphasis in original).

To the extent the ALJ provided explanations of inconsistency based on plaintiff's testimony, they were not clear and convincing. The ALJ wrote that mental status examinations were inconsistent with plaintiff's statements about memory, concentration, and appropriate behavior and interactions. AR 28.

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014).

Here the ALJ acknowledged that plaintiff presented as anxious or irritable on occasion but also cited records that showed plaintiff to be cooperative, calm, and pleasant. *See* AR 23 (citing 751-52, 1125, 1143, 1146, 481-85, 506, 1022-25, 1045-49, 1105-06, 1134, 1143, 1146, 1168-69). The ALJ also discounted plaintiff's testimony because mental status examinations did not show significant difficulties in memory, however, plaintiff did not testify that she is unable to work due to deficits in her memory. *See* AR 28.

Although there were instances of mental status exams that were inconsistent with plaintiff's testimony, there were also instances where plaintiff's mental status exams were consistent with her reported symptoms. Throughout the period at issue, providers noted her that her mood was depressed, anxious, irritable, guarded, or distressed. AR 769, 788, 1106, 1007, 1125, 1133, 1152, 1169. She spoke in a loud and fast tone. AR 769, 771, 773, 779. 989, 994, 998, 1002, 1007. She was distracted, preoccupied, or less actively engaged. AR 776, 777, 791, 1152, 1176 1169, 1186. Impairments were noted in her thought process, and at times her thought process was tangential. AR 786, 989, 994, 998, 1004, 1007.  Her insight was noted as poor. 1169.

It appears that the ALJ failed to take into account the waxing and waning nature of mental health symptoms. *See Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (claimants who suffer from mental conditions have symptoms that wax and wane, with downward cycles, cycles of improvement, and mixed results from treatment).

Therefore, this was not a clear and convincing reason for discounting plaintiff's testimony.

The ALJ also wrote that plaintiff "was able to go to the post office, has attended appointments alone on occasion, and said that she spent a period of time alone when her roommates were out of town," which the ALJ contrasted with plaintiff's testimony that she is unable to leave the house alone. AR 23. An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here there is no context to the note where her provider wrote that plaintiff was able to take her Social Security paperwork to the post office and it is therefore unclear

whether it is inconsistent with testimony that she could not leave the house alone. AR 768. Similarly, the note about being on her own only states that "I've been kinds [sic] on my own for 3 weeks. They work at the shipyard. They are in California." AR 1192. There is no context to whether plaintiff left the house on her own while she was alone. Therefore, this was not a clear and convincing reason for discounting plaintiff's testimony.

The ALJ also mentioned activities such as playing video games, applying for jobs, working on a GED, living with her boyfriend, German and Gaelic practice, listening to music, and reading. AR 30. However, the ALJ did not contrast these activities with plaintiff's statements and testimony but rather found that they were "not inconsistent with an ability to perform light, simple work with limited simple interaction." *Id*. This is not a clear and convincing reason for discounting plaintiff's testimony. *See, Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) ("[T]o satisfy the substantial evidence standard, the ALJ must...explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony.") (emphasis in original).

The ALJ also reasoned that plaintiff was not credible because she reported not taking her psychiatric medications. AR 27-28.

An inadequately explained failure to follow a prescribed treatment regimen can serve as a valid reason for discounting a claimant's testimony. *See* Social Security Ruling ("SSR") 16-3p (if an individual fails to follow a prescribed treatment that might improve symptoms, an ALJ may find that the alleged intensity of an individual's symptoms is inconsistent with the record). *See also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to...follow a

1    prescribed course of treatment...can cast doubt on the sincerity of the claimant's pain

2    testimony."). An ALJ must not draw adverse inferences about the plaintiff's failure to

3    seek or comply with treatment unless the ALJ considers the possible reasons they have

4    not sought or complied with treatment. *See, Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir.

5    2007) (failure to seek treatment, or comply with treatment, may not be considered as

6    evidence of lack of credibility, if there is a legitimate reason, for example, lack of funds,

7    lack of insurance, adaptations, and whether there is efficacy of medication).

8         Here the ALJ referenced a note where plaintiff reported she stopped taking her

9    psychiatric medications because she was too tired to swallow and it induced too much

10   stress, and another note that plaintiff had not taken her ADHD medication since April

11   because she did not receive the prescription for methylphenidate. AR 27-28. However, it

12   is not clear how this factored into the ALJ's decision or whether the ALJ considered the

13   reasons for plaintiff's noncompliance, as required. *See* SSR 16-3P. Notes from mental

14   health treatment providers indicate that plaintiff stated she was concerned about

15   efficacy of treatment, had anxiety about taking medication because of trials that resulted

16   in severe side effects, and had difficulty with a new routine. AR 506, 516, 525, 529-530,

17   532, 541, 595, 642, 731, 754, 758, 772, 815, 819, 825, 827.

18        Therefore, the ALJ did not provide any clear and convincing reasons for

19   discounting plaintiff's subjective symptom testimony.

20   • Harmless error

21        An error that is inconsequential to the non-disability determination is harmless.

22   *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors

23   of the ALJ result in a residual functional capacity (RFC) that does not include relevant

24

25

work-related limitations, the RFC is deficient and the error is not harmless. *Id.* at 1052, 1054*; see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

Here the vocational expert testified that an individual who would be absent two to three days on a consistent basis due to psychological symptoms that preclude the ability to complete an eight-hour workday, and 40-hour work week would not be able to perform any of the jobs identified. AR 65. He also testified that an individual who would be off task for at least 20 percent of an eight-hour day due to psychological symptoms that cause lapses in concentration could not perform any of the jobs identified. *Id.*

Had the ALJ credited plaintiff's testimony, it may have resulted in a more restrictive RFC. Therefore, the errors in evaluating her testimony were not harmless.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. On remand, the Commissioner must conduct a de novo hearing, allow plaintiff to present additional evidence, re-evaluate the medical opinions of Dr. Ruddell and the 2021 opinion of Dr. Eisenhauer, and re-evaluate plaintiff's statements about symptoms and limitations.

Dated this 30th day of May 2025.

Theresa L. Fricke
United States Magistrate Judge